UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GEORGE A. PLESSINGER, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:17cv71 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act

through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since December 27, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: lumbar degenerative disc disease and stenosis, thoracic degenerative disc disease, obesity, and systemic hypertension (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After consideration of the entire record, the Administrative Law Judge finds that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 2 hours at one time and a total of 6 hours during an 8-hour workday; and walk for 15-30 minutes at one time and a total of 2-3 hours during an 8 hour workday; and walk for 15-30 minutes at one time and a total of 2-3 hours during an 8-hour workday. The claimant requires a sit/stand option, which allows him to stand for 5 minutes every hour. He can frequently push/pull and reach overhead with his bilateral upper extremities. The claimant is limited to work that only occasionally requires him to use his bilateral lower extremities. He can occasionally climb stairs with a handrail; balance; stoop; or kneel. The claimant can never climb ladders or scaffolds; crouch; or crawl. He is precluded from working around unprotected heights and commercial driving. The claimant can tolerate frequent exposure to moving mechanical parts. The claimant cannot tolerate exposure to extreme cold. Finally he is limited to work with only occasional bilateral lower extremity exposure to vibrations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 21, 1986 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 27, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 26- 35).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on September 1, 2017. On October 13, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff has stated the following background facts. Plaintiff held several jobs before becoming allegedly disabled at age 26. He worked in customer service, as a diesel mechanic, a CNC machine operator, an electrical lineman, a welder, and as a fast food worker. Plaintiff claims that he began experiencing back pain by age 20. At age 21, Plaintiff began working as a truck driver, a job that required lifting as he loaded and unloaded the truck. He later began working in a factory, where he started experiencing thoracic pain. He also claims he had a heart murmur and sinus and ear problems. Later, he went back to working as a truck driver. He injured his back four-wheeling in 2011. In April 2012, Plaintiff was in another four-wheeler accident, and complained of left leg and back pain in May 2012. In July 2012, Plaintiff was referred to an orthopedist and received nerve block injections in August 2012.

In August 2012, Kevin Rahn, M.D., orthopedist, recommended proceeding with excision of discs at L4-5 and possibly at L5-S1. Dr. Rahn noted congenital stenosis from L2 to S1 but opined that the recent herniation at these levels crushing the thecal sac needed to be resolved first. Dr. Rahn noted risk of heart, lung, kidney problems, and pointed to the fact that Plaintiff is "large" (356 pounds) as a warning for increased risk in "positioning" as well as increased risk of numbness and paresthesias that may never fully resolve.

In September 2012, Plaintiff's back pain remained chronic. In December 2012, Plaintiff fell out of a truck. Plaintiff underwent surgery for ruptured lumbar discs on March 14, 2013. Post-surgery, Plaintiff experienced neck-level radiculopathy from under his shoulder blades down his left arm and pain with numbness involving his left fourth and fifth fingers. By September 2013,

he described the arm pain as "nearly resolved," but still has persistent arm weakness, headache, and neck pain.

Since the March 2013 surgery up through at least September 2013, Plaintiff required help getting dressed. He could not stand and take a shower or stand to urinate. He could not roll over in bed.

At least by April 2013, Plaintiff experienced loss of reflexes in his knees and ankles and problems raising his legs in a clinical environment. Numbness and pain persisted, and the pain seemed to radiate even into his head. Based on clinical observation of neck pain inferior to the shoulder blades, occipital pressure and pressure behind the eyes, and mid back pain, Jeffrey Kachmann, M.D., neurosurgeon, ordered a cervical MRI. The MRI showed "a multitude of levels of cervical foraminal narrowing" as well as "underlying congenital spine narrowing" and straightening of the neck's normal curve.

In May 2013, Dr. Kachmann noted Plaintiff's low and mid back pain since the lower back surgery. Dr. Kachmann ordered a thoracic spine MRI which shows, among other things, central spinal canal narrowing at T3-4, T4-5, T5-6, and T6-7. The "most notable" findings are "disc herniations with superior extrusion" at T4-5 and T5-6. Both "appear to abut the anterior spinal cord with mild flattening." In June 2013, Dr. Kachmann opined that neurologically there is "anterior cord abutment but not overt compression." Dr. Kachmann referred Plaintiff to pain management.

In May 2013, Consultative Examiner Luke Ernstberger, M.D., examined Plaintiff, and among other things, found abnormal posture in that Plaintiff "walks with a stooped gait and leaning toward" the left. Dr. Ernstberger recorded reduced strength in both the right and the left

lower extremities. His assessments included radiculopathy, hypertension, and obesity.

In early July 2013, a vocational rehabilitation specialist informed Plaintiff that he was not eligible for vocational rehabilitation because of his physical condition.

In August 2013, a nurse practitioner found Plaintiff's systems positive for depression, difficulty walking, headache, and insomnia. On exam, the nurse practitioner noted an antalgic gait but little else. Plaintiff has presented with mid back pain that seems to radiate to the lower back and right leg, aggravating daily activities, standing, and walking. The nurse practitioner's diagnoses include failed back surgery syndrome of the lumbar spine, and lumbosacral neuritis.

In September 2013, J. Sands, M.D., a medical consultant for the SSA acknowledged that Plaintiff's activities of daily living "are limited due to back pain" and that he "does have objectively significant back problems that are significant for someone his age."

As of May 2014, Plaintiff continued on his blood pressure management medicine but experiences headaches and irritable with elevations.

In July 2014, the SSA's consultative examiner doctor noted that Plaintiff's blood pressure only goes up when he is in pain. All levels of lumbar flexion are limited in range of motion, with lumbar extension at only 40 percent of normal. Consultative Examiner Xavier Laurente, M.D., did not observe sensation loss in the legs, but specifically assessed that Plaintiff "has some signs of nerve impingement (with positive straight leg raise test)." Dr. Laurente also assessed lumbar radiculopathy. Additionally, Laurente opined that Plaintiff's blood pressure was elevated and also elevated when he was in pain. Dr. Laurente recommended "better pain control". Dr. Laurente indicated that Plaintiff's positive straight leg raise test is "very suggestive that he has some sort of nerve impingement." Further, Dr. Laurente noted that Plaintiff felt pain on palpitation at the back

area despite lack of redness and swelling there. Dr. Laurente limited Plaintiff to walking 30 minutes maximum at one time without interruption, and to stand 30 minutes total in an eight hour work day. Dr. Laurente further limited foot controls even while seated. Dr. Laurente opined that Plaintiff cannot walk a block at a reasonable pace on rough or uneven surfaces. Likewise he cannot use standard public transportation. Dr. Laurente emphasized both Plaintiff's lumbar back pain and pain control issues as causing "very significant" limitations, affecting him most of the time for physical work-related activities.

At an early February 2015 visit with Dr. Coleman, a pain management specialist, Plaintiff was positive for anxiety and depression as well as insomnia, headache, and difficulty walking.

In February 2015, Dr. Coleman, a pain management specialist, clinically observed foot numbness, as well as low back and bilateral lower extremity pain post-surgery. On this basis, he ordered a lumbar MRI. Among other MRI findings, swelling was visible in the posterior subcutaneous fat. The MRI also showed narrowing of the thecal sac at L1-2, "severe narrowing" of the thecal sac at L2-3 and L4-5, and effacement of the thecal sac at L5-S1. Both lateral recess stenosis and foraminal stenosis were also present at L2-3, L3-4, L4-5, and L5-S1. Multilevel degenerative changes had occurred with stenosis since the prior MRI in August 2014.

Upon examining Plaintiff in February 2015, Dr. Coleman's "Clinical Assessment" was that Plaintiff can walk less than 50 yards before his legs tingle. Dr. Coleman opined that the spinal stenosis at L2-3 and L3-4 is "symptomatic and function limiting" but also not responding to either conservative approaches or injection therapies.

As the ALJ noted in his decision, the August 2014 MRI scan is most recent and showed "congenital" stenosis at L2-L3 in the spine which narrowed the thecal sac; the nerve root at L3-4

was at least partly effaced, as was the nerve root at L4-5 where there was an apparent previous laminectomy; the nerve root at L5-S1 was also at least partly effaced.

In March 2015, Dr. Coleman examined Plaintiff, who then weighed 370 pounds. Dr. Coleman documented "pain in the lumbosacral region that radiates into his left hip laterally to the foot." Dr. Coleman noted that a "lot of the pain appears to be concentrated in the left hip and left foot." Plaintiff complained of numbness and tingling in the left leg with walking, and sometimes a bit of right leg numbness too. Examination of Plaintiff's middle lumbar spine produced tenderness to the touch.

Also in March 2015, Gautam Phookan, M.D., neurosurgeon, examined Plaintiff. Starting at the top of the lumber vertebra, Dr. Phookan pointed out disc bulge at L2-3, and mostly right-sided herniation at L3-4. Dr. Phookan pointed out herniation worse on left side at L4-5, and "diffuse large" central to right herniation at L5-S1, at the base of Plaintiff's spine. With at least some of the significant herniations on the right side, but not a lot of right leg pain, Dr. Phookan said Plaintiff "seems to have a lot of axial low back pain," and so was not sure that discectomy at L3-4 and L4-5 was the correct strategy. Instead, Dr. Phookan encouraged exploring other treatment options, including specifically encouraging Plaintiff to lose weight. Dr. Phookan opined that if nothing else works, the referring doctor should send Plaintiff back and Phookan would then consider discectomy at L3-4, L4-5, and L5-S1. Dr. Phookan's diagnoses included "post laminectomy syndrome," also known as failed back surgery syndrome. Dr. Phookan also diagnosed "referred/radicular pain" in both legs.

At the administrative hearing (Tr. 41-66), medical expert John Pella, M.D., assisted the ALJ in the interpretation of the medical evidence (Tr. 43-50). In his testimony, Dr. Pella opined

as to Plaintiff's work-related functional limitations (Tr. 45-46). The ALJ summarized Dr. Pella's testimony (Tr. 29-30) and accorded his opinion "great weight" (Tr. 30).

Plaintiff challenges Dr. Pella's opinion. Plaintiff argues that the ALJ erroneously favored Dr. Pella's opinion over the opinions of other physicians. Plaintiff also argues that the ALJ "played doctor" by stating that Plaintiff back problems were "a non-surgical disease at this time".

The Commissioner, however, argues that the ALJ properly sought Dr. Pella's assistance in interpreting the medical evidence and that Dr. Pella's opinion (and the evidence on which it was based) constituted substantial evidence supporting the ALJ's finding and decision.

"Medical opinions" are statements from "acceptable medical sources," such as physicians and psychologists," about the nature and severity of medical problems and the associated work-related functional limitations. *See* 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2). It is the ALJ's province to resolve conflicting medical opinions; a reviewing court does not re-weigh the evidence. *See, e.g., White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (where the claimant argued that a medical expert's opinion was not a credible evidentiary foundation for the ALJ's findings, the court observed, "This is a tough argument to make on a Social Security appeal because the reviewing court 'is not allowed to substitute its judgment for the ALJ's by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or deciding questions of credibility'").

An ALJ may obtain the assistance of a medical expert in interpreting the record evidence. *See, e.g., Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). A medical expert's testimony as to a claimant's functional limitations, when buttressed by other evidence, may constitute substantial evidence supporting an ALJ's findings and decision. *See White*, 415 F.3d at 659 ("The ALJ's

ultimate residual functional capacity finding tracked [medical expert] Dr. Steiner's opinion almost exactly, and Dr. Steiner's opinion, buttressed by the State Consultants' opinions, was an adequate evidentiary foundation for the finding").

Dr. Pella testified that he had reviewed the medical evidence (Tr. 43-44). He summarized the medical evidence of Plaintiff's back problems, including the evaluation and treatment of those problems, the low back surgery, and the subsequent complaints of pain in the upper back (Tr. 44-45). As to Plaintiff's functional limitations, Dr. Pella opined that Plaintiff retained the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour day (for up to 2 hours at a time), to stand for 2 to 3 hours total (for 30 minutes at a time), to walk for 2 to 3 hours total (for 15 to 30 minutes at a time) (Tr. 45-46). Plaintiff required a sit/stand option (5 minutes every hour) (Tr. 46). Plaintiff could engage in only frequent overhead pushing and pulling and exposure to moving mechanical parts; in only occasional balancing, stooping, kneeling, exposure to vibrations in the lower extremities, climbing stairs with a handrail; no climbing ladders/ scaffolds, crouching, or crawling; and no exposure to unprotected heights or extreme cold (Tr. 46).

The Commissioner asserts that Dr. Pella's opinion as to Plaintiff's functional limitations was supported by and consistent with the opinions of State agency physicians J.V. Corcoran, M.D., and J. Sands, M.D. Dr. Corcoran believed that Plaintiff was not as limited, opining that he could lift and carry 10 pounds frequently and 20 pounds occasionally; could stand, walk, and/or sit for 6 hours in an 8-hour work day; and could only occasionally climb, balance, stoop, kneel, crouch, and/or crawl (Tr. 72-73). Dr. Sands believed that Plaintiff was slightly more limited in his abilities to lift and carry and to stand and walk. Dr. Sands opined that Plaintiff could lift and carry

10 pounds; could stand and/or walk for 2 hours and sit for 6 hours; could never climb ladders/ropes/scaffolds or do overhead lifting/reaching; and could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and/or crawl (Tr. 83-86). Neither believed that Plaintiff required a sit/stand option. The Commissioner argues that although the ALJ accorded less weight to those opinions (Tr. 33), they supported Dr. Pella's opinion, to the extent that they were largely consistent with it. The Commissioner concludes that Dr. Pella's opinion, buttressed by the opinions of State agency physicians Drs. Corcoran and Sands, and along with the evidence discussed by the ALJ in his decision, constitutes substantial evidence supporting the ALJ's finding as to Plaintiff's functional limitations. The ALJ's findings track Dr. Pella's opinion almost exactly (compare Tr. 27 with Tr. 45-46).

Plaintiff argues that Dr. Pella was not qualified to serve as a medical expert (or was "lesser-qualified") because he was just a "lung doctor". However, as the Commissioner notes, it was sufficient that Dr. Pella was a medical doctor (an "acceptable medical source" as defined at 20 C.F.R. § 404.1513) who could understand and interpret the evidence via his medical expertise. Moreover, the record shows that Dr. Pella had two separate medical specialties: internal medicine and pulmonary disease (Tr. 468).

Plaintiff asserts that Dr. Pella did not review the entire record because Dr. Pella did not hear Plaintiff's testimony. However, it is undisputed that Dr. Pella's opinion was based only on the evidence he received prior to the hearing (see Tr. 43-44 (Dr. Pella's statement that he had received and reviewed the evidence)). Plaintiff suggests that Dr. Pella did not review the evidence (Pl. Brief 15 ("simply walked into the hearing room asserting to have reviewed the evidence")). However, Plaintiff has failed to present any evidence that Dr. Pella lied about reviewing the

evidence.

Plaintiff argues that Dr. Pella's expert testimony was incorrect. However, Plaintiff's argument and assertions are merely an alternative interpretation of the record evidence that are insufficient to invalidate the ALJ's findings and substantial evidence on which those findings were based. Plaintiff's argument and assertions ultimately constitute an improper request to have this Court re-weigh the evidence.

Plaintiff argues that the ALJ erroneously ignored the "examining doctors and multiple treating doctors in favor of [Dr. Pella]" (Pl. Brief 14). Notably, however, Plaintiff does not identify any treating physicians who rendered any opinion as to his work-related functional limitations. As to examining doctors, Plaintiff apparently refers to the opinion of consultative examining physician Xavier Laurente, M.D. At the hearing, Plaintiff's attorney questioned Dr. Pella about Dr. Laurente (Tr. 47; see Tr. 443-58 (Dr. Laurente's report)). Among other things, Dr. Laurente had opined that Plaintiff could not sit, stand, or walk for a total of 8 hours, suggesting that he could not work an 8-hour day (Tr. 451). Dr. Pella attributed the differences between his opinion and Dr. Laurente's opinion to the credibility of Plaintiff's pain (Tr. 47). Dr. Laurente repeatedly referred to Plaintiff's pain as a factor in his opinion (Tr. 452, 453, 454, 455, 456). Therefore, Dr. Pella believed that Dr. Laurente's opinion was based, at least in part, on Plaintiff's subjective allegations of disabling pain, the resolution of which is reserved to the ALJ, *see* 20 C.F.R. § 404.1529 (describing the process by which pain is evaluated in a disability claim) (see Tr. 31).

Plaintiff also asserts that the ALJ did not conduct an "ordinary credibility analysis" (Pl. Brief 14). The ALJ found that Plaintiff's allegations of subjectively disabling symptoms were

13

"not entirely credible" (Tr. 29). The ALJ noted that Plaintiff's allegations of subjective disability were inconsistent with Dr. Pella's opinion as to his functional limitations (Tr. 29-30). The Commissioner correctly contends that this was a valid credibility consideration. *See* 20 C.F.R. § 404.1529(c)(1) ("We also consider the medical opinions of your treating source and other medical opinions as explained in § 404.1527"). The ALJ also noted that Plaintiff's post-surgery complaints of back pain were apparently musculoskeletal (rather than neurological) and were treated conservatively (non-surgically) (Tr. 29-30). These, too, were valid credibility considerations. *See* 20 C.F.R. §§ 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled"), 404.1529(c)(3)(v) ("Factors relevant to your symptoms, such as pain, which we will consider include: ... (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms").

Clearly, under current law, the ALJ properly relied on Dr. Pella's opinion as to Plaintiff's functional limitations. That opinion, in turn, constituted substantial evidence supporting the ALJ's findings and decision.

Next, Plaintiff argues that the ALJ's decision was defective because the ALJ "play[ed] doctor" (Pl. Brief 19). Specifically, Plaintiff faults the ALJ for stating that "claimant is felt to have a non-surgical disease at this time" (Pl. Brief 19). Plaintiff asserts that this was "a separate and independent conclusion" and that the ALJ did "not cit[e] any doctor for it" (Pl. Brief 19).

However, as the Commissioner points out, the ALJ's statement at issue was not an unsupported conclusion. Rather, the statement was part of the ALJ's summary of Dr. Pella's testimony. At the hearing, Dr. Pella testified as to Plaintiff's medical history (Tr. 44-45). As part

14

of that testimony, Dr. Pella stated, "He's been found to be non-surgical disease at this time" (Tr. 44). In his decision, the ALJ summarized Dr. Pella's testimony (Tr. 29-30). As part of that summary, the ALJ stated, "The claimant is felt to have a non-surgical disease at this time" (Tr. 29). Thus, the ALJ did not err by summarizing Dr. Pella's testimony.

Moreover, Dr. Pella's testimony was supported by the report of Gautam Phookan, M.D. On February 16, 2015, Plaintiff was referred to Dr. Phookan for consideration of surgery (Tr. 484). On March 6, 2015, Dr. Phookan examined Plaintiff and observed that his lumbar disc herniations were inconsistent with his pain complaints (Tr. 495). For example, Dr. Phookan observed that Plaintiff's "significant [lumbar disc] herniations… seem to be predominantly right side," but that he did "not have a lot of right leg pain" (Tr. 495). Dr. Phookan opined, "I am not sure a lumbar discectomy [surgery]… is the right strategy for him. Other treatment options should be explored. I have also encouraged him to lose weight" (Tr. 495). Dr. Phookan said he'd consider surgery only if "nothing [else] works" (Tr. 495). Thus, Dr. Phookan's report supported Dr. Pella's statement that Plaintiff was "non-surgical."

The record clearly shows that the ALJ appropriately and properly summarized Dr. Pella's testimony. Plaintiff has failed to show that Dr. Pella's opinion was flawed, that the ALJ erred by relying on it, or that the ALJ's decision lacked supporting substantial evidence. Accordingly, the decision of the ALJ must be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: December 4 , 2017.

<u>s/ William C.  Lee</u><br>
William C. Lee, Judge<br>
United States District Court